Nancy A. FLEMING, Respondent,

v.

Robert W. HAGEN, Jr. ESTATE, Appellant.

No. A05–49.

Court of Appeals of Minnesota.

Aug. 30, 2005.

William S. Partridge, Jay W. Ramos, Farrish Johnson Law Office, Chartered, Mankato, MN, for respondent.

Joseph P. Bluth, Manahan, Bluth Kohlmeyer Law Office, Chartered, Mankato, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; TOUSSAINT, Chief Judge; and ROBERT H. SCHUMACHER, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

Appellant Robert W. Hagen, Jr. Estate challenges the district court's adverse grant of summary judgment, arguing the court erred by concluding that a partnership between Robert W. Hagen, Jr. and respondent Nancy A. Fleming was not dissolved by operation of the estate's pleadings and Fleming's pleadings requesting enforcement of the right to dissolve the partnership. We affirm.

## FACTS

In April 1989, Hagen and Fleming, who are siblings, executed a written agreement concerning a property-management partnership—Wesley Properties—that they had operated together since 1967. As to the partnership's duration, the written agreement provided that the "partnership shall continue until terminated as such term is defined herein."

One event triggering termination is "the purchase by either partner of the other partner's interests," which must occur "[u]pon the death of either partner[, at which time] the surviving partner *shall* purchase the deceased partner's interest in the partnership and the estate of the deceased partner *shall* sell such interest to the surviving partner." (Emphasis added.) The agreement specifies the terms of the sale: "The purchase price of a deceased partner's interest in the partnership shall be: 1/2 interest of loans and contract [for] deeds due [plus] $25,000."

The agreement lists three other events that trigger termination: "the bankruptcy, receivership, or dissolution of the partnership"; "the sale or transfer of all or substantially all of the assets of the partnership"; or "the mutual agreement of both partners." The agreement does not provide that the partnership may be dissolved or terminated unilaterally by either partner.

In August 2002, Fleming filed a claim against Hagen, alleging that because of his "failure and refusal to follow the terms of the partnership agreement," she believed it was "not reasonably practicable to carry on the business of the partnership with [him]." The complaint requested an order "[e]nforcing [Fleming's] rights under the partnership agreement, ordering Hagen to provide a complete and accurate accounting" of the partnership's finances, and "[e]nforcing Fleming's rights under [the Uniform Partnership Act of 1994] including but not limited to dissolving and winding up the partnership pursuant to [Minn. Stat. § 323A.0801 (5) (2004)]," which provides that a partnership is dissolved

on application by a partner, a judicial determination that:

(i) the economic purpose of the partnership is likely to be unreasonably frustrated;

(ii) another partner has engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with that partner; or

(iii) it is not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement[.]

Minn.Stat. § 323A.0801 (5).

Effective January 1, 2002, the Uniform Partnership Act of 1994 (1994 UPA), Minn. Stat. §§ 323A.1–01–.12–03 (2002), replaced the Minnesota Uniform Partnership Act, Minn.Stat. §§ 323.01–.47 (2000) (MUPA). 1997 Minn. Laws ch. 174, art. 12, § 69. The 1994 UPA "governs all partnerships" after January 1, 2002, regardless of the date of their formation, and therefore controls the agreement here. Minn.Stat. § 323A.1202(2)(b).

In April 2003, Hagen filed a counterclaim, alleging that Fleming had violated the agreement by failing to equally share partnership profits and that he had been undercompensated for services provided to the partnership. Hagen requested an order requiring Fleming to reimburse the partnership and compensate him for services and "[e]nforcing [his] rights to dissolve and wind up the partnership." The day after filing the counterclaim, Hagen died. The district court subsequently granted Hagen's motion requesting that his estate take his place in the proceeding.

In October 2003, Fleming brought a motion for summary judgment, arguing that the agreement controlled the parties' rights and obligations, that Hagen's death triggered the agreement's sale-upon-death clause, and that Hagen's estate was required as a matter of law to sell his partnership interest to Fleming pursuant to the terms set forth in the agreement. The estate also moved for summary judgment, arguing that the partnership had "terminated upon [Fleming's] commencement of her action to dissolve the partnership or, due to mutual consent, when [Hagen] filed responsive pleadings also seeking dissolution" and that the agreement's sale-upon-

death provision was therefore unenforceable. The estate's argument relied heavily upon *Maus v. Galic,* 669 N.W.2d 38 (Minn. App.2003), which held that a "partnership is dissolved by mutual consent and the express will of the partners upon an exchange of pleadings alleging dissolution of the partnership by the express will of a partner." 669 N.W.2d at 39. Hagen's family wanted to avoid application of the partnership agreement's sale-upon-death provision because the terms of that provision would allow Fleming to buy Hagen's share of the assets for far less than Hagen's family believes the assets are worth.

In March 2004, the district court granted Fleming's motion, reasoning that (1) *Maus* was inapposite to the extent that its holding concerning dissolution upon cross-pleadings was based upon the repealed MUPA, which gave partners broader dissolution powers than does the 1994 UPA in effect here, and (2) Fleming specifically requested relief under Minn.Stat. § 323A.0801 (5), which allows dissolution only following a judicial determination that specific circumstances exist and which is not a request for immediate dissolution of the partnership. The court concluded the agreement controls the disposition of the partnership assets and appointed a special master to determine the partnership's property, assets, and liabilities.

The court denied the estate's motion for amended findings of fact. In November 2004, the parties entered into a stipulation of partial settlement whereby Fleming paid the estate approximately $250,000 to settle various outstanding claims concerning the distribution of partnership assets and liabilities. The settlement specifically reserved the estate's right to appeal the earlier grant of partial summary judgment to Fleming.

## ISSUE

Did the estate's answer and counterclaim operate to dissolve the partnership pursuant to Minn.Stat. § 323A.0801(1) (2004)?

## ANALYSIS

On appeal from summary judgment, this court determines whether any genuine issues of material fact exist and whether the district court erred in applying the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Summary judgment may be granted only if, after viewing the evidence in the light most favorable to the nonmoving party, the moving party has clearly sustained her burden of proving that no genuine issues of material fact exist and that judgment is warranted as a matter of law. *Vacura v. Haar's Equip.,* 364 N.W.2d 387, 391 (Minn.1985).

■ Statutory construction and the interpretation of contract language are legal issues also subject to de novo review. *Vue v. State Farm Ins. Cos.,* 582 N.W.2d 264, 265 (Minn.1998). When, as here, a district court grants summary judgment after applying its interpretation of a partnership agreement and relevant statutory provisions to undisputed facts, we review the legal conclusion de novo. *Lefto v. Hoggsbreath Enters., Inc.,* 581 N.W.2d 855, 856 (Minn.1998).

The estate argues the district court erred by granting Fleming summary judgment without considering Minn.Stat. § 323A.0801(1) (2004), which provides that "a partnership at will [is dissolved upon] the partnership's having notice from a partner ... of that partner's express will to withdraw as a partner, or on a later date specified by the partner." The estate maintains that the agreement was at-will and therefore susceptible to unilateral termination and that Hagen's counterclaim constituted notice of his express will to withdraw from the partnership under section 323A.0801(1).

As a threshold matter, Fleming argues that the estate has waived the right to now raise an argument based upon section 323A.0801(1) by failing to properly raise the issue before the district court. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn. 1988) (this court does not generally consider matters or legal theories not presented to district court). We disagree. It is apparent from the memorandum accompanying the district court's order that the court considered whether Hagen's counterclaim was sufficient to dissolve the partnership either independently or in conjunction with Fleming's complaint under section 323A.0801. The matter is properly before us.

■ We first address the estate's assertion that the district court erred by not concluding that Hagen's counterclaim unilaterally dissolved the agreement pursuant to Minn.Stat. § 323A.0801. First, section 323A.0801(1) is applicable only to an at-will partnership, defined by statute as "a partnership in which the partners have not agreed to remain partners until the expiration of a definite term or the completion of a particular undertaking." Minn.Stat. § 323A.0101(10) (2004). In the agreement at issue here, the partners agreed that the death of either partner and subsequent purchase of that partner's interests by the surviving partner would provide just such a definite term and particular undertaking, thereby ending the partnership. The agreement gives three other events that "shall terminate" the partnership, none of which is certain to happen: bankruptcy or dissolution, sale of the partnership's assets, or the mutual agreement of the parties. We conclude that the partnership was not at-will and as such was not suscep-

tible to dissolution by operation of section 323A.0801(1).

Hagen and Fleming's agreement simply does not contemplate a scenario whereby one partner can intentionally and unilaterally dissolve the partnership. In this respect, the estate's continued reliance on *Maus* is misplaced insofar as there, "the termination provision in [the parties'] agreement allowed for either partner to terminate the partnership by leaving 'for any reason.'" 669 N.W.2d 38, 39 (Minn. App.2003). Moreover, the repealed MUPA, relied upon by the *Maus* court, allowed dissolution of any partnership "[i]n contravention of the agreement between the partners, where the circumstances do not permit a dissolution under any other provision of this section, by the express will of any partner at any time." Minn. Stat. § 323.30(2) (2000). The 1994 UPA applicable here contains no such provision.

Even if the partnership were at will and governed by section 323A.0801(1), we disagree with the estate's contention that Hagen's counterclaim requesting an order "[e]nforcing [his] rights to dissolve and wind up the partnership" constituted "notice" of his "express will to withdraw as a partner," as required by the statute. "A person notifies or gives a notification to another by taking steps reasonably re-quired to inform the other person...." Minn.Stat. § 323A.0102(c) (2004). It is true that the estate's request for an order "[e]nforcing [his] rights to dissolve and wind up the partnership" does appear to request eventual termination of the partnership, but it is also true that the request was only one of several made of the court, and it does not reasonably constitute an unambiguous expression of Hagen's will to immediately dissolve the partnership, as the estate now maintains.

## DECISION

The record before us does not support the estate's argument that Hagen's counterclaim constituted notice of his express will to withdraw from the partnership and that the partnership and partnership agreement were therefore terminated at the time of Hagen's death. The district court properly granted Fleming's motion for summary judgment.

**Affirmed.**